IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MIGUEL TAVAREZ,**

      **Plaintiff,**

      **vs.**                                                **Civ. No. 20-1314  JFR**

**KILOLO KIJAKAZI, Acting**
**Commissioner of Social Security,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

    **THIS MATTER** is before the Court on the Social Security Administrative Record

(Doc. 15)[2] filed June 24, 2021, in connection with Plaintiff's *Opposed Motion to Reverse and/or*

*Remand,* filed December 14, 2021.  Doc.  26.  Defendant filed a Response on March 15, 2022.

Doc. 30.  Plaintiff filed a Reply on March 31, 2022.  Doc. 31.  The Court has jurisdiction to

review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having

meticulously reviewed the entire record and the applicable law and being fully advised in the

premises, the Court finds that Plaintiff's motion is well taken and shall be **GRANTED**.

### I.  Background and Procedural Record

    Plaintiff Miguel Tavarez (Mr. Tavarez) alleges that he became disabled on June 13, 2017,

at the age of 49, due to the alleged impairments of hernia, left knee issues, left shoulder issues,

diabetes, depression, high blood pressure, high cholesterol, gastroesophageal reflux disease

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  Docs. 34-36.

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 15), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

(GERD), and sleep apnea.[3]  Tr. 65, 207.  Mr. Tavarez completed high school in 1987.  Tr. 208.

Mr. Tavarez worked as a zookeeper and for animal control.  Tr. 208-229-31.  Mr. Tavarez

stopped working on September 13, 2017, due to his medical conditions.  Tr. 207.  Mr. Tavarez's

date of last insured is March 31, 2023.[4]  Tr. 12.  Therefore, to receive disability insurance

benefits, Mr. Tavarez must show he was disabled prior to that date.  *See Potter v. Sec'y of Health*

*& Human Servs*., 905 F.2d 1346, 1347 (10th Cir. 1990).

On June 22, 2018, Mr. Tavarez filed an application for Social Security Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401

*et seq*.  Tr. 170-71.  Mr. Tavarez's application initially was denied on February 1, 2019.  Tr. 63,

64-81, 108-111.  It was denied again at reconsideration on June 19, 2019.  Tr. 82-101, 102, 113-

118.  On July 17, 2019, Mr. Tavarez filed a written request for a hearing by an Administrative

Law Judge.  Tr. 119-20.  Administrative Law Judge (ALJ) Eric Weiss held a hearing on June 11,

2020.[5]  Tr. 38-62.  Mr. Tavarez was represented at the hearing by non-attorney John Bishop.[6]  *Id*.

On July 13, 2020, ALJ Weiss issued an unfavorable decision.  Tr. 38-62.  Mr. Tavarez appealed

the unfavorable decision to the Appeals Council and on October 30, 2020, the Appeals Council

declined review.  Tr. 1-6.  On December 17, 2020, Mr. Tavarez timely filed a complaint seeking

judicial review of the Commissioner's final decision.  Doc. 1.

---

[3] At reconsideration, Mr. Tavarez alleged increased medication for depression and issues with vertigo and retinopathy.
Tr. 93.

[4] To qualify for DIB, a claimant must establish that he met the statutory requirements for disability on or before his
date of last insured. *See* 42 U.S.C. §§ 416(i)(3), 423(c)(1); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

[5] The hearing was held telephonically due to the COVID-19 pandemic.  Tr. 40.

[6] Mr. Tavarez is represented in these proceedings by Attorney Benjamin Decker.  Doc. 1.

## II.  Applicable Law

### A.     Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Commissioner has

adopted the familiar five-step sequential analysis to determine whether a person satisfies the

statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[7]  If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of

---

[7] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.*  Gainful work activity is work activity that you do for pay or profit.  20 C.F.R. §§ 404.1572(b), 416.972(b).

meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 107 S. Ct. 2287, 2294 n. 5 (1987).  The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

## B.     Standard of Review

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]"  *Langley,* 373 F.3d at 1118, or if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of

4

evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency. *Langley*, 373 F.3d at 1118.

### III. <u>Analysis</u>

The ALJ made his decision that Mr. Tavarez was not disabled at step five of the sequential evaluation. Tr. 24-25. Specifically, the ALJ found that Mr. Tavarez met the insured status requirements through March 23, 2023. Tr. 12. The ALJ determined that Mr. Tavarez had not engaged in substantial gainful activity from his alleged onset date of June 13, 2017. Tr. 13 At step two, the ALJ determined that Mr. Tavarez suffered from the following severe impairments: left shoulder labrum anterior and posterior lesion; biceps tendonitis and impingement status-post arthroscopic surgical repair; left shoulder adhesive capsulitis and glenohumeral osteoarthritis; lumbar degenerative disc disease; left ulnar sensory neuropathy; mild left carpal tunnel syndrome; and status-post left knee lateral and medial meniscectomy. *Id.* He also found non-severe physical impairments of obesity, small bowel obstruction, non-ST segment elevation myocardial infarction and acute coronary syndrome, status-post cardiac catheterization and stent placement, type II diabetes mellitus, GERD, obstructive sleep apnea with continuous pressure airway pressure, insomnia, and bilateral mild non-proliferative diabetic retinopathy. Tr. 13-14. *Id.* The ALJ further found non-severe mental impairments of depression and dysthymic disorder. Tr. 14. At step three, ALJ Weiss determined that

Mr. Tavarez did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1. Tr. 16-17. Accordingly, the ALJ proceeded to step four and assessed that Mr. Tavarez had

the RFC to perform light work,[8]

> except able to lift 20 pounds occasionally and lift and/or carry 10 pounds frequently; and can push/pull the same limits as he can lift and/or carry. He is able to walk and stand for 6 hours per 8-hour workday and sit for 6 hours per 8-hour workday with normally scheduled breaks. The claimant is able to occasionally climb ramps and stairs, but can never climb ladders, ropes and scaffolds. He is able to frequently balance and can occasionally stoop, crouch and kneel, but can never crawl. He is able to occasionally reach overhead with the non-dominant left upper extremity, can frequently reach in other directions with the left upper extremity, and can frequently handle with the left upper extremity. He must avoid no more than occasional exposure to unprotected heights.

Tr. 17-24. ALJ Weiss concluded at step four that Mr. Tavarez was unable to perform his past

relevant work. Tr. 24. At step five, however, ALJ Weiss determined that based on

Mr. Tavarez's age, education, work experience, RFC, and the testimony of the VE, that jobs

existed in significant numbers in the national economy that Mr. Tavarez could perform.[9] Tr. 25.

As a result, ALJ Weiss found that Mr. Tavarez was not disabled. Tr. 25-26.

As set forth in his Motion, Mr. Tavarez frames the issue before the Court as (1) whether

the ALJ properly evaluated the opinion evidence of treating Physical Therapist Elizabeth

Lonergan who assessed greater limitations in Mr. Tavarez's ability to sit/stand/walk, reach in all

directions, and handle/finger/feel than reflected in the ALJ's RFC; and (2) whether the ALJ

---

[8] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b).

[9] (1) Cashier (DOT code 211.462-010, light exertion, unskilled work, with 1,700,000 jobs nationally); (2) Mail Clerk (DOT code 209.687-026, light exertion, unskilled work, with 106,000 jobs nationally); and (3) Sales Attendant (DOT code 299.677-101, light exertion, unskilled work, with 91,000 jobs nationally). Tr. 25.

properly considered Mr. Tavarez's obesity in assessing the RFC.  For the reasons discussed

below, the Court finds that the ALJ failed to provide sufficient legitimate explanations supported

by substantial evidence for rejecting PT Lonergan's Functional Capacity Assessment.  This case,

therefore, requires remand.

A.    **Functional Capacity Assessment**

On November 6, 2019, Mr. Tavarez presented to PT Lonergan at Armada Physical

Therapy for a "Baseline/General Purpose Functional Capacity Evaluation" to determine Mr.

Tavarez's "overall musculoskeletal and functional abilities as it relates to the physical demands

outlined by the United States Department of Labor in the Dictionary of Occupational Titles."  Tr.

1468.  The evaluation took two hours and the categories of inquiry/testing included Medical

History and Present Status; Musculoskeletal Testing;[10] Reliability of Pain; Upper Extremity

Testing; Non-Material Handling; Occasional Material Handling; and Sitting and Standing.  Tr.

1468-75.  PT Lonergan explained/concluded that Mr. Tavarez

> demonstrated the ability to perform within the SEDENTARY Physical Demand
> Category based on the definitions developed by the US Department of Labor and
> outlined in the Dictionary of Occupational Titles.  Patient is unable to work full
> time because he can only work for up to 6 hours per day while taking into account
> his need to alternate sitting and standing.  However, the unskilled sedentary
> occupational base is significantly eroded because he is unable to sit for 5 hours and
> 17 minutes.
>
> Consistency of Effort
>
> During objective functional testing, this patient demonstrated consistent effort
> throughout 50.0% of this test which would suggest significant observational and
> evidenced based contradictions resulting in consistency of effort discrepancies,
> self-limiting behaviors, and/or sub-maximal effort.  The overall results of this
> evaluation do not represent a true and accurate representation of this patient's
> overall physical capabilities.  The functional results of this evaluation represent a
> minimal level of functioning for this patient.  During objective functional testing,

---

[10] Musculoskeletal Testing included cervical range of motion, lumbar range of motion, lower extremity range of motion and strength, and upper extremity range of motion.  Tr. 1470-72.

the items that were inconsistent resulting in self-limited behavior/sub-maximal effort included left hand grip strength inconsistencies, right five span grip inconsistencies, right five span versus right grip inconsistencies, left five span versus right grip inconsistencies and left hand pinch strength inconsistencies.

Reliability of Pain Ratings

Throughout objective functional testing, this patient reported reliable pain ratings 77.8% of the time which would suggest that pain could have been considered a limiting factor during functional testing.

Limiting Factors

During this evaluation, the patient presented with limiting factor(s) during objective functional testing which included: Compensatory Techniques, Inadequate Strength, Increased Pain and Mechanical Deficits.

Tr. 1468.

The ALJ assessed PT Lonergan's opinion and explained as follows:

The record contains an opinion from Elizabeth K. Lonergan, a treating physical therapist, who conducted a functional capacity evaluation on November 6, 2019. Dr. [sic] Lonergan opined that the claimant was limited to less than sedentary unskilled work with the ability to only work up to six hours a day with sitting/standing option.  He could occasionally grasp, could occasionally perform pinch testing, could do fine motor work occasionally, and could occasionally perform gross motor activities (Exhibit 25F, pages 1 and 5-6).  Ms. Lonergan opined the claimant could walk occasionally.  He did not use an assistive device and exhibited a left antalgic gait pattern.  He could occasionally bend and squat and could occasionally perform bilateral overhead lifting of 10 pounds.  He could carry 10 pounds, could sit for up to 4 hours total and could stand up to 2 hours total, and required position changes every 30 minutes (Exhibit 25F, pages 7-8).

I find the opinion of Ms. Lonergan not persuasive since it is supported by neither the exam or the objective file.  First, while Ms. Lonergan is a treating medical provider, she noted inconsistencies that included self-limiting behavior/sub-maximal effort and his bilateral handgrip.  Thus, based on the claimant's self-limitations, I find the opinion inaccurate or a true determination of the claimant's limitations.  Furthermore, Ms. Lonergan noted the results represented a minimal level of functioning, not the same standards used by Social Security (Exhibit 25F, page 1).  Finally, the longitudinal medical evidence is more consistent with the opinions of the State agency medical consults who found the claimant could perform a range of light work although I imposed additional limitations beyond

what even the State agency medical consultants determined (Exhibits 2A, pages 13-14, 3A, pages 16-18, and 30F, pages 5-6).[11]

Tr. 23.

Mr. Tavarez argues that the ALJ's discussion of treating physical therapist Elizabeth Lonergan's Functional Capacity Evaluation is incomplete.  Doc. 26 at 18-22.  Mr. Tavarez argues that the Functional Capacity Evaluation performed by PT Lonergan is the most comprehensive and detailed assessment of Mr. Tavarez's physical functioning in the record.  *Id.*  Mr. Tavarez argues that it was improper for the ALJ to invalidate PT Lonergan's findings related to Mr. Tavarez's ability to sit/stand/walk, reach overhead and handle based on PT Lonergan's reportedly inconsistent efforts with respect to Mr. Tavarez's ability to grip and pinch.  *Id.*  Mr. Tavarez further argues that the ALJ ignored PT Lonergan's statement regarding pain as a limiting factor during the functional testing.  *Id.*  In sum, Mr. Tavarez asserts that the ALJ failed to perform a meaningful analysis or explain why he invalidated a "detailed, scientific, multifaceted functional capacity evaluation due to one inconsistency that does not have any bearing on other opinions contained therein."  *Id.*

The Commissioner contends that the ALJ reasonably found PT Lonergan's opinion unpersuasive in view of the inconsistencies she described and the evidence as a whole.  Doc. 30 at 11-19.  The Commissioner argues that the ALJ accurately noted the "significantly problematic

[11] On January 31, 2019, nonexamining State agency medical consultant Sam Baker, M.D., assessed, *inter alia*, that Mr. Tavarez could *frequently* climb ramps, stairs, ropes and scaffolds; could *frequently* balance, stoop, kneel, couch and crawl; and had limited left overhead reaching.  Tr. 78.  On June 17, 2019, nonexamining State agency medical consultant J. Chris Carey, M.D., assessed, *inter alia*, that Mr. Tavarez could *frequently* climb ladder, ropes and scaffolds and was otherwise unlimited in his ability to perform postural work-related physical activities; and had limited left overhead reaching.  Tr. 97-98.  The ALJ assessed that Mr. Tavarez could *occasionally* climb ramps and stairs, but could never climb ladders, ropes and scaffolds; he could *frequently* balance, *occasionally* stoop, crouch and kneel, but never crawl; could *occasionally* reach overhead with the non-dominant left upper extremity, *frequently* reach in other directions with the left upper extremity, and could *frequently* handle with the left upper extremity.  Tr. 17.

support for the limitations [PT Lonergan] identified" based on Mr. Tavarez's inconsistent effort and PT Lonergan's statement that the overall results of the testing represented a minimal level of functioning. *Id.* The Commissioner asserts that the "submaximal or self-limiting efforts and inconsistencies did not need to be present on every single subtest in order to raise questions about the validity of the result of the evaluation overall" and that the "grip strength inconsistencies were sufficient to make the examiner conclude that her own overall results were inaccurate" and not limited to Mr. Tavarez's hand strength. *Id.* The Commissioner contends that the ALJ also addressed the degree to which PT Lonergan's opinion was consistent with evidence from other sources and correctly reasoned that the opinion lacked support from the objective file and that the longitudinal medical evidence was more consistent with the opinions of the State agency medical consultants who found Mr. Tavarez able to perform a range of light work. *Id.*

An ALJ evaluates the persuasiveness of medical opinions based on: (1) the degree to which the opinion is supported by objective medical evidence and supporting explanation; (2) how consistent the opinion is with other evidence in the record; (3) the source's treating relationship with the claimant (i.e., how long/frequently the source treated the claimant and for what purpose); (4) whether the source was specialized on the impairment on which he or she is opining; and (5) any other factor tending to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The most important factors are "supportability ... and consistency." 20 C.F.R. §§ 404.1520c(a), §§416.920c(a). The SSA does not give "any specific weight, including controlling weight, to any medical opinion(s)." *Id.*

In considering the persuasiveness of medical opinions, the ALJ "must discuss the weight he assigns." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The ALJ is not required to discuss each factor articulated in the regulations; rather, the ALJ must merely explain

his weighing decision with sufficient specificity so as to be capable of review.  *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).  Put differently, if an ALJ rejects an opinion, he "must then give 'specific, legitimate reasons for doing so.' "  *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

Here, the ALJ's reasons for rejecting PT Lonergan's functional capacity assessment are not legitimate or supported by substantial evidence.  The ALJ first explains that PT Lonergan's functional capacity assessment findings are not supported by her exam.  Tr. 23.  PT Lonergan's report, however, undermines the ALJ's explanation.  Here, the exam lasted two hours.  Tr. 1468.  Further, PT Lonergan's report explicitly identifies the testing she conducted, details the substance of and procedure for each test, notes Mr. Tavarez's heart rate throughout the testing, identifies various limiting factors during the testing such as pain, and thoroughly discusses and explains the basis for the assessed functional limitations based on all of these considerations.  Tr. 1468-475.  Thus, the ALJ's first explanation is not supported.

The ALJ next explains that based on "inconsistencies that included self-limiting behavior/sub-maximal effort and his bilateral handgrip," the opinion is inaccurate and not a true determination of Mr. Tavarez's abilities.  Tr. 23.  PT Lonergan's report included testing and functional limitations regarding Mr. Tavarez's ability to squat lift, shoulder lift, overhead lift, bilateral carry, bend, squat, walk, forward reach, above shoulder reach, sit and stand.  Tr. 1468-77.  The ALJ failed to consider these limitations, for which there was no reported evidence of self-limiting behavior or sub-maximal effort, or to provide specific legitimate reasons for rejecting them.  Moreover, the ALJ's rejection of all of PT Lonergan's findings based on PT Lonergan's comments in the report regarding Mr. Tavarez's consistency of effort with respect to his "bilateral handgrip" amounts to improper picking and choosing of the medical evidence

11

which the ALJ is not allowed to do. *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008)

(quotation omitted) ("It is improper for the ALJ to pick and choose among medical reports, using

portions of evidence favorable to his position while ignoring other evidence.").[12]

     Next, the ALJ explains that PT Lonergan's results represented a minimal level of

functioning which is not the same standard as that used by Social Security.  However, this is not

a legitimate basis for discounting a medical opinion.  An ALJ must evaluate all medical opinions

in the record using the relevant factors.  20 C.F.R. § 404.1520c(a); *see generally Baca v. Dep't of

Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) ("Although findings by other agencies

are not binding on the Secretary, they are entitled to weight and must be considered."); *see also

Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (explaining that a finding from other

agencies is evidence that the AL must consider and explain why it is not persuasive).  If the ALJ

were otherwise correct to disregard PT Lonergan's opinion, merely including this statement

would not necessarily be error.  However, the ALJ is not otherwise correct in his assessment.

     Last, the ALJ explains that PT Lonergan's assessment is not consistent with the objective

file and that the longitudinal medical evidence is more consistent with the opinions of State

agency medical consultants.  Tr. 23.  The ALJ does not point to any specific evidence in making

this explanation, but elsewhere in his determination cites to various treatment notes wherein

Mr. Tavarez demonstrated improvement following shoulder surgery and expressed pain

improvement in his knee following physical therapy.  Tr. 20; Doc. 30 at 16.  However, the ALJ's

---

[12] The Commissioner argues that Ms. Lonergan's comments with respect to Mr. Tavarez's consistency of effort related to the "overall results" and Mr. Tavarez's "overall physical capabilities."  Doc. 30 at 14.  However, the ALJ's discussion does not reflect that he read PT Lonergan's findings this broadly.  *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").  Additionally, PT Lonergan's comments with respect to Consistency of Effort specifically identified the items that were inconsistent resulting in self limiting behavior/sub-maximal effort to include "left hand grip strength inconsistencies, right five span grip inconsistencies, right five span versus right grip inconsistencies, left five span versus right grip inconsistencies and left hand pinch strength inconsistencies."  Tr. 1468.

picking and choosing of the evidence to support his rejection of PT Lonergan's opinion on the basis of temporary improvements failed to address significant consistencies between PT Lonergan's findings and other medical opinion evidence and/or why he rejected this probative evidence. This is error. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (the record must demonstrate that the ALJ considered all of the evidence and must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects).

For example, PT Lonergan assessed that Mr. Tavarez should *avoid* above shoulder reaching and could reach forward only *occasionally* based on his left shoulder impairment,[13] which is largely consistent with other examining and treating medical opinion evidence in the record. Tr. 1474. Mr. Tavarez treated with pain specialist Miguel Pupiales, M.D., in 2019 and 2020, who consistently made objective findings that Mr. Tavarez had severely limited range of motion in his left shoulder due to status post left shoulder repair with neuropathy and noted that Mr. Tavarez was positive for left upper extremity ulnar nerve syndrome as well as left carpal tunnel syndrome.[14] Tr. 1506-07, 2040-48. Thus, Dr. Pupiales's treatment notes support PT

---

[13] The ALJ assessed that Mr. Tavarez could *occasionally* reach overhead and *frequently* reach in all other directions. Tr. 17.

[14] On September 3, 2019, Dr. Pupiales prepared an *Examining Physician's Statement for Application for Disability Benefits Form* on behalf Mr. Tavarez. Tr. 1465-67. Dr. Pupiales completed this form as part of Mr. Tavarez's disability retirement application through the Public Employees Retirement Association of New Mexico. *Id.* Dr. Pupiales assessed therein that due to Mr. Tavarez's left shoulder injuries, associated surgeries, arthritis, etc., that Mr. Tavarez was permanently disabled and unable to work. *Id.* The ALJ rejected Dr. Pupiales's disability assessment finding it "conclusory, and inconsistent with treating records" and that it was "made as an application for disability benefits under work insurance and for a completely different program than Social Security." Tr. 23. *See generally, Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) ("Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered."); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (explaining that a finding from other agencies is evidence that the AL must consider and explain why it is not persuasive). The ALJ also discussed Dr. Pupiales's treatment notes from 2019 and 2020 and, despite Dr. Pupiales's treatment notes indicating severely limited range of motion in his shoulder, concluded that "[t]hese records and the overall records show no more than moderate pain and limitations." Tr. 23. In support of his conclusion, the ALJ cited nonexamining State agency medical consultant Dr. Sam Baker's RFC assessment, in which Dr. Baker assessed only limited overhead reaching due to Mr. Tavarez's shoulder impairment. *Id.; see* fn. 11, *supra*. Notably, however, Dr. Baker never examined or treated Mr. Tavarez and did not have the benefit of Dr. Pupiales's treatment notes or disability assessment (or PT Lonergan's Functional Capacity Assessment) when he made his RFC assessment. *See* 20 C.F.R. 1520c(c)(3) (explaining that the ALJ is to consider medical opinions and consider, *inter*

Lonergan's functional assessment of Mr. Tavarez's inability to reach overhead and limited ability to reach forward.  Additionally, consultative examiner Athanasios Manole, M.D., also assessed that Mr. Tavarez had moderate limitations in reaching due to decreased range of motion in his left shoulder that are consistent with PT Lonergan's assessment.[15]  Tr. 1271.  The ALJ failed to discuss these consistencies in the record.

Lastly, the Court notes that the jobs ALJ Weiss determined Mr. Tavarez could perform all require *frequent* reaching in any direction.  Tr. 60.  The VE nonetheless testified that based on his "observation, experience, knowledge, and education," that those jobs would not require more than *occasional* overhead reaching by Mr. Tavarez's left non-dominant upper extremity.  *Id.*  Here, however, PT Lonergan assessed that Mr. Tavarez should avoid overhead reaching altogether thereby eliminating the jobs the VE identified.  As such, the ALJ's failure to properly evaluate and provide legitimate reasons for rejecting PT Lonergan's assessment requires that this case be remanded.

### B.      Remaining Issues

The Court will not address Mr. Tavarez's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

*alia*, the relationship of the provider with the claimant); *see also Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight of all).  Thus, the ALJ failed to address how the more recent medical opinion evidence regarding Mr. Tavarez's shoulder condition by his treating providers might have impacted Dr. Baker's opinion with respect to Mr. Tavarez's ability to reach in all directions. *See generally Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (noting the significance of a recent physician's examination which found more limitations than an examination by another physician two years prior).

[15] The nonexamining State agency medical consultants reviewed Dr. Manole's consultative exam and assessed only limited left overhead reaching.  Tr. 78, 98.  Dr. Manole's assessment, however, noted left decreased range of motion out to sides, as well as backward and forward reaching, and concluded that Mr. Tavarez had "decreased ROM in the left shoulder."  Tr. 1269-71.

**IT IS SO ORDERED.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding By Consent**